UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RAPHAEL ARNETT,

        Plaintiff,

v.

ALLSTATE VEHICLE AND PROPERTY
INSURANCE CO.,

        Defendant.
_____/

Case No. 1:23-cv-11138

Honorable Thomas L. Ludington
United States District Judge

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Raphael Arnett filed an insurance claim with Defendant Allstate Vehicle and Property Insurance, Co. after a fire destroyed his two-story house in Saginaw, Michigan. But Defendant denied Plaintiff's claim, concluding Plaintiff did not reside at the house at the time of the fire, caused the fire, and misrepresented or concealed material facts when filing his claim. Accordingly, Plaintiff sued Defendant, alleging Defendant breached his homeowner insurance policy and seeking appraisal under the policy and penalty interest under Michigan's Uniform Trade Practice Act. Plaintiff then filed a motion for partial summary judgment on his requests for appraisal and penalty interest. But because Plaintiff's ability to appraise his damages and collect penalty interest depend on whether, in fact, Plaintiff's claim is covered by his policy, his Motion for Partial Summary Judgment will be denied.

I.

Around 6:00 AM on April 16, 2022, a fire largely destroyed a two-story, wood frame house at 408 Oak St. in Saginaw, Michigan (the "Oak Street House"). *See* ECF Nos. 3-2; 14-2 at PageID.227. Plaintiff Raphael Arnett owned the house, and Defendant Allstate Vehicle and

Property Insurance Co. insured it. *See id.* Two days after the fire, Plaintiff filed a claim with Defendant, seeking to recover his loss from the fire. ECF No. 14-2 at PageID.226.

On April 19, 2022, Defendant requested that Plaintiff furnish (1) a "Sworn Statement in Proof of Loss;" (2) a damage estimate; and (3) an inventory of the personal property Plaintiff alleged was damaged or destroyed. ECF No. 14-3 at PageID.232. Defendant noted that "no decision ha[d] been reached with respect to [Plaintiff's] claim." *Id.* That same day, Defendant additionally requested Plaintiff's utility records. *See* ECF Nos. 14-4.

On May 26, 2022, Plaintiff sent Defendant an inventory of over 800 pieces of property he alleged were damaged in the fire with an actual cost value of $25,388.64 and a replacement cost of $30,360.48. *See* ECF No. 14-6. On Jule 16, 2022, Plaintiff filed his Sworn Statement in Proof of Loss, which averred that he did not cause the fire and that his claim was valued at $283,061.43. ECF No. 1-2 at PageID.19.

On August 16, 2022, Plaintiff was examined by Defendant under oath. *See* ECF No. 7-1 at PageID.147. During this examination, Plaintiff testified that, one year before the fire at 408 Oak St. in Saginaw, Michigan, he entered a one-year lease for an apartment in Houston, Texas. *Id.* at PageID.150. Plaintiff testified that he surrendered his Michigan driver's licenses in July 2021, *id.* at PageID.147–48 and renewed his Texas lease in 2022. *See id.* at PageID.152. Moreover, Plaintiff testified that he was primarily living in Texas until July 2022—three months *after* the Oak Street House fire—but regularly returned to Saginaw. *Id.* at PageID.149, 151. Indeed, Plaintiff's father passed away in early April, 2022, so Plaintiff returned to Saginaw for his father's funeral either on either April 9 or April 10, 2022. *Id.* at PageID.168. Throughout his time in Saginaw, Plaintiff admitted to "spending every night at the [Oak Street House] up until" the morning of April 15, 2022. *Id.* Plaintiff testified that he spent the night of April 15, 2022—the night before the fire—at

a local motel with a friend. *Id.* Notably, Plaintiff testified that he locked all doors when he left the Oak Street House on April 15, 2022. *Id.* at PageID.167, 169.

At the same time Defendant was investigating Plaintiff's insurance claim, the Saginaw City Fire Department was investigating the cause of the Oak Street House fire. First responders from the Fire Department concluded that—because of the severity of the fire, the reports of neighbors that the house had been unoccupied since January 2022, and their inability to quickly identify the fire's cause—the fire was "suspicious in nature" and warranted further investigation. ECF No. 22-3 at PageID.544 Throughout its investigation, the Saginaw Fire Department noted that (1) the doors to the Oak Street House were closed but unlocked when the fire broke out; (2) the fire left irregular burn patterns; and (3) the fire appeared to have three separate origin points: the first-floor bedroom and both second floor bedrooms. *Id.* at PageID.546–48. The Department ultimately classified the fire as "incendiary,"[1] *id.* at PageID.548, after five of eight samples taken from the burned carpet and flooring of the Oak Street House revealed the presence of "ignitable liquid" such as "paint thinners, mineral spirits, and charcoal starters." ECF No. 22-4 at PageID.600.

On October 14, 2022, Defendant denied Plaintiff's insurance claim for three reasons. First, Defendant denied Plaintiff's claim because Plaintiff was "not physically residing" at the Oak Street House on April 16, 2022, so the house was not a "residence premises" as defined by Plaintiff's homeowner's policy, and the policy accordingly did not cover the loss. ECF No. 3-3 at PageID.119; *see also* ECF No. 3-2 at PageID.83–84 (defining "residence premises" as "the single-family building structure identified as the insured property . . . where [the insured individual] *reside[s]* and which is *principally used as a private residence*" (emphasis added)).

---

[1] An "incendiary" fire is defined by the National Fire Protection Association as a fire that "is intentionally ignited in an area or under circumstances where and when there should not be a fire." NAT'L FIRE PROT. ASS'N, NFPA 921 § 3.3.121 (2021).

Second, Defendant denied Plaintiff's claim because it concluded "[t]he April 16, 2022 fire was not an accident, but rather was intentionally set by [Plaintiff] or at [Plaintiff's] direction and is therefore excluded from coverage." ECF No. 3-3 at PageID.119; *see also* ECF No. 3-2 at PageID.89, 95 (expressly excluding coverage for any loss to dwelling or personal property caused by "intentional or criminal acts of or at the direction of any insured person, if the loss that occurs: (a) may be reasonably expected to result from such acts; or (b) is the intended result of such acts").

Third, Defendant denied Plaintiff's claim because it concluded Plaintiff, throughout his claim submission, concealed or misrepresented (1) the use and occupancy of the Oak Street House; (2) Plaintiff's primary residence in Texas; (3) Plaintiff's financial condition; and (4) Plaintiff's wrongful connection to the April 16, 2022, fire. ECF No. 3-3 at PageID.119. And Plaintiff's homeowner's policy expressly allows Defendant to void the policy or deny a claim if Plaintiff misrepresents or fraudulently conceals material facts throughout a claim submission or investigation. ECF No. 3-2 at PageID.85 ("We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.").

Plaintiff maintains Defendant wrongfully denied his claim and, in March 2023, filed a Complaint against Defendant in Saginaw County Circuit Court, ECF No. 1-1 at PageID.11–16, which Defendant removed to this Court on May 15, 2023. ECF No. 1. Plaintiff's Complaint alleges breach of contract (Count I), seeks appraisal (Count II), and seeks penalty interest under Michigan's Uniform Trade Practices Act (UTPA), MICH. COMP. LAWS § 500.2006 (Count III). ECF No. 1-1 at PageID.11–15. Defendant Answered Plaintiff's Complaint on May 15, 2023 and alleged, as an affirmative defense, that *no coverage* applies to Plaintiff's claims under the terms of his policy, for the same reasons Defendant articulated in its October 2022 denial letter. ECF No. 3 at PageID.33–34. In other words, Defendant maintains that it's denial of Plaintiff's claims was

consistent with—rather than a breach of—Plaintiff's policy and, thus, appraisal and penalty interest are unwarranted. *See id.*

On January 30, 2024, Plaintiff filed a motion for partial summary judgment arguing that this Court should determine the amount of damages Plaintiff *would* receive under Counts II and III *if* Plaintiff was successful at trial on his breach-of-contract claim by establishing that he was, in fact, entitled to coverage. ECF No. 14. Defendant argues "Plaintiff is putting the cart before the horse." ECF No. 16 at PageID.381.

## II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When the moving party "also bears the burden of persuasion at trial, [its] 'initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."' *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby*

*Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) ("[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.") (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984) (emphasis omitted))).

### III.

Plaintiff seeks partial summary judgment on Counts II and III, seeking appraisal and penalty interest, respectively. *See generally* ECF No. 14. Each Count will be addressed in turn.

### A. Count II: Appraisal

In accordance with Michigan Law, which requires insurance policies "issued or delivered" in the state to include an appraisal provision, Plaintiff's homeowner's insurance policy provides:

> If [Plaintiff] and [Defendant] fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. . . .
>
> The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to [Plaintiff] and to [Defendant], the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss. Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

ECF No. 3-2 at PageID.100; *see also* MICH. COMP. LAWS § 500.2833(m)(1) (requiring policies to include an appraisal provision).

In Count II, Plaintiff seeks to enforce this policy provision, such that *if* Plaintiff is found to be entitled to replacement costs and the actual cash value of the Oak Street House "dwelling" at

- 6 -

trial, the exact amount of his recovery will be determined by appraisers rather than the jury. ECF No. 1-1 at PageID.14. And Plaintiff seeks summary judgment on this Count, arguing that no genuine issue of material fact exists as to this Provision's application so, in the interest of "judicial economy," this Court should order that, *if Plaintiff succeeds at trial in establishing his coverage and breach of contract,* his replacement cost and actual cash value recovery be determined by appraisal.[2] ECF No. 14 at PageID.213–16.

But Plaintiff recognizes the underlying question of fact is whether coverage applies to his claim in the first instance. *See* ECF No. 14 at PageID.216. Indeed, coverage is a condition precedent to Plaintiff's ability to demand appraisal or seek any other remedy. *See Dupree v. Auto-Owners Ins. Co.*, 857 N.W.2d 247, 249 (noting "matters of *coverage* under an insurance agreement are generally determined by the courts" while "the *method* of determining the loss is a matter recovered for the appraisers" (emphasis in original)). Simply put, if Plaintiff (1) did not reside at Oak Street House at the time of the fire; (2) had any hand in causing the fire to occur; or (3) misrepresented or concealed any material fact throughout his claim submission, his policy does *not cover* his alleged loss and Defendant rightfully denied his claim.

Indeed, as Defendant emphasizes, Michigan courts, this Court, and the Sixth Circuit routinely defer appraisal determinations until *after* an underlying issue of coverage is resolved. *See, e.g.*, *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 469–70 (Mich. Ct. App. 1991) ("Where the parties cannot agree on coverage, a court is to determine coverage . . . before an appraisal of the damage to the property."); *Luke v. Home-Owners Ins. Co.*, No. 329433, 2017 WL

---

[2] Plaintiff further argues that, *if he succeeds at trial*, he should recover $239,412 for the loss to his dwelling because, although both Parties' independent consultants estimated that the damage to the 408 Oak St. dwelling *exceeded* this amount, *see* ECF Nos. 14-9 at PageID.321 ($261,803.78); ECF No. 14-10 at PageID.349 ($276,942.70), both Parties agree that Plaintiff's policy caps this recovery at $239,412. ECF No. 14 at PageID.213–14 (referencing ECF No. 3-2 at PageID.64).

239459, at *2 (Mich. Ct. App. Jan. 19, 2017); *The D Boys, LLC v. Mid-Century Ins. Co.*, 644 F. App'x 574, 579 (6th Cir. 2016) (reversing trial court grant of partial summary judgment on appraisal issue when insurer denied liability for loss and there was a genuine dispute as to whether the loss was covered under the insured's policy, and noting "the district court should have" "determine[d] whether the damage [alleged] was covered under the policy prior to ordering the parties to participate in . . . appraisal); *Maddox v. State Farm Fire & Cas. Co.*, No. 2:22-CV-11633, 2023 WL 9059568, at *4 (E.D. Mich. Aug. 14, 2023) (noting a suit is "ripe for appraisal" only if the parties do not dispute coverage); *Seneca Special Ins. Co. v. ID Ventures, LLC,* No. 222CV11599TGBJJCG, 2023 WL 2618253, at *3 (E.D. Mich. Mar. 23, 2023) (noting a court is "statutorily mandated" to order the parties to participate in Michigan's appraisal process *only* "once an insurer admits that a loss is covered under its policy and all that remains is a determination of loss"). This Court will follow suit, here.

To the extent Plaintiff argues efficiency justifies an order of appraisal at this juncture, he is mistaken. True, appraisal efficiently saves judicial fact-finders the time of calculating complicated costs and damages when coverage is undisputed or resolved. But mandating appraisal here, prior to resolving a disputed underlying issue of coverage, would be inefficient because appraisal will not occur if Plaintiff's policy does not cover his claim. Importantly, this Court is not holding that Plaintiff's insurance claim—if successful—cannot be appraised. To the contrary, appraisal is mandated by Michigan statute upon the demand of either Party when coverage is clear, MICH. COMP. LAWS § 500.2833(m)(1), and Defendant agrees that the policy's appraisal provision requires appraisal in this case, *if* the factfinder first concludes that coverage is available for Plaintiff's alleged subject loss. ECF No. 16 at PageID.397 n. 3. But ordering appraisal at this juncture would be premature. So, Plaintiff's Motion will be denied without prejudice.

## B. Count III: Penalty Interest

In Count III, Plaintiff seeks penalty interest under Michigan's UTPA. ECF No. 14 at PageID.215–220. Michigan's UTPA provides that an insurer's untimely payment of benefits is an "unfair trade practice" and accordingly requires insurers to timely pay insured individuals the benefits they are entitled to under the terms of an insurance contract. *See* MICH. COMP. LAWS § 500.2006(1). If the insurer does not timely pay, the insured party can recover 12% interest on the benefits they are otherwise entitled to, which begins to accrue 60 days after the insured submits a satisfactory proof of loss to the insurer. MICH. COMP. LAWS § 500.2006(1), (4).

Plaintiff seeks summary judgment on Count III because, he argues, it is undisputed that Plaintiff submitted satisfactory proof of loss on August 9, 2022 and, thus, penalty interest began to accrue on October 8, 2022. ECF No. 14 at PageID.219–20. Accordingly, Plaintiff requests an order that October 8, 2022 is the date on which UTPA penalty interest began to accrue, which will hypothetically allow the Parties to easily calculate the exact amount of penalty interest owed if Plaintiff is hypothetically successful at trial. *See* ECF No. 18 at PageID.416.

Plaintiff's argument seeking summary judgment on Count III suffers the same flaws as his argument seeking summary judgment on Count II. Although the UTPA expressly authorizes insured parties to recover penalty interest when claims are untimely paid by insurers, the UTPA also expressly conditions this recovery on the fact that the insured is "entitled to receive benefits" under their policy, so long as "the liability of the insurer for the claim is not reasonably in dispute." MICH. COMP. LAWS § 500.2006(1), (4); *see also Soc'y of St. Vincent De Paul in Archdiocese of Detroit v. Mt. Hawley Ins. Co.*, 49 F. Supp. 2d 1011, 1013 (E.D. Mich. 1999) (denying partial summary judgement to plaintiff seeking penalty interest because "Plaintiff's claim for . . . loss payment is reasonably in dispute"); *Angott v. Chubb Grp. Ins.*, 717 N.W.2d 341, 351 (Mich. Ct.

App. 2006) (noting "penalty interest under MCL 500.2006 is not available if there exist[s] a reasonable dispute regarding the claim"). Here, Defendant's liability on Plaintiff's claim *is* reasonably in dispute, and a genuine question of material fact exists as to whether Plaintiff's alleged loss is covered by his policy. Because Plaintiff may not be entitled to *any* penalty interest under the UTPA, this Court will not grant Plaintiff partial summary judgment on Count III nor will this Court establish, as a matter of fact, the date on which this would-be interest began to accrue.

In sum, There are at least three questions of material fact in this case:

(1) Did Plaintiff cause the April 16, 2022 fire?
(2) Did Plaintiff reside somewhere other than the Oak Street House at the time of the fire?; and
(3) Did Plaintiff conceal or misrepresent material facts throughout his filing or Defendant's investigation of his insurance claim?

If any of these questions are answered in the affirmative, Plaintiff does not have insurance coverage for his alleged loss, Defendant rightfully denied Plaintiff's insurance claim, and Plaintiff is not entitled to appraisal or penalty interest. Thus, Plaintiff's Motion for Partial Summary Judgment on the Counts of his Complaint seeking these two remedies will be denied without prejudice.

## IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Partial Summary Judgment, ECF No. 14, is **DENIED WITHOUT PREJUDICE.**

Dated: June 3, 2024         s/Thomas L. Ludington
                            THOMAS L. LUDINGTON
                            United States District Judge