UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RAPHAEL ARNETT,

                Plaintiff,

v.

ALLSTATE VEHICLE AND PROPERTY
INSURANCE CO.,

                Defendant.

_____/

Case No. 1:23-cv-11138

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S MOTION *IN LIMINE* AND
DENYING PLAINTIFF'S MOTION *IN LIMINE***

Plaintiff Raphael Arnett filed an insurance claim with Defendant Allstate Vehicle and

Property Insurance, Co. after a fire destroyed his two-story house in Saginaw, Michigan. But

Defendant denied Plaintiff's claim, concluding Plaintiff's alleged loss was excluded from coverage

because Plaintiff did not reside at the house at the time of the fire, caused the fire, and

misrepresented or concealed material facts when filing his claim. Accordingly, Plaintiff sued

Defendant, alleging Defendant breached his homeowner insurance policy, seeking appraisal under

the policy, and seeking penalty interest under Michigan's Uniform Trade Practice Act. Trial is

currently scheduled to begin on August 20, 2024. Currently before this Court are the Parties'

Motions *in Limine* which, for reasons explained below, will both be denied.

**I.**

Around 6:00 AM on April 16, 2022, a fire largely destroyed a two-story, wood frame house

at 408 Oak St. in Saginaw, Michigan (the "Oak Street House"). *See* ECF Nos. 3-2; 14-2 at

PageID.227. Plaintiff Raphael Arnett owned the house, and Defendant Allstate Vehicle and

Property Insurance Co. insured it. *See id.* Two days after the fire, Plaintiff filed a claim with Defendant, seeking to recover his loss from the fire. ECF No. 14-2 at PageID.226.

On April 19, 2022, Defendant requested that Plaintiff furnish (1) a  "Sworn Statement in Proof of Loss;" (2) a damage estimate; and (3) an inventory of the personal property Plaintiff alleged was damaged or destroyed. ECF No. 14-3 at PageID.232. Defendant noted that "no decision ha[d] been reached with respect to [Plaintiff's] claim." *Id.*  That same day, Defendant also requested Plaintiff's utility records. *See* ECF Nos. 14-4.

On May 26, 2022, Plaintiff sent Defendant an inventory of over 800 pieces of personal property he alleged were damaged in the fire with an actual cost value of $25,388.64 and a replacement cost of $30,360.48. *See* ECF No. 14-6. On Jule 16, 2022, Plaintiff filed his Sworn Statement in Proof of Loss, which averred that he did not cause the fire and that his claim was valued at $283,061.43. ECF No. 1-2 at PageID.19.

On August 16, 2022, Plaintiff was examined by Defendant under oath. *See* ECF No. 7-1 at PageID.147. During this examination, Plaintiff testified that, one year before the Oak Street House fire, he entered a one-year lease for an apartment in Houston, Texas. *Id.* at PageID.150. Plaintiff testified that he surrendered his Michigan driver's licenses in July 2021, *id.* at PageID.147–48 and renewed his Texas lease in 2022. *See id.* at PageID.152. Moreover, Plaintiff testified that he was primarily living in Texas until July 2022—three months *after* the Oak Street House fire—but regularly returned to Saginaw. *Id.* at PageID.149, 151. Indeed, Plaintiff's father passed away in early April, 2022, so Plaintiff returned to Saginaw for his father's funeral either on April 9 or April 10, 2022. *Id.* at PageID.168. Throughout his time in Saginaw, Plaintiff admitted to "spending every night at the [Oak Street House] up until" the morning of April 15, 2022. *Id.* Plaintiff testified that he spent the night of April 15, 2022—the night before the fire—at a local motel with a friend. *Id.*

- 2 -

Notably, Plaintiff testified that he locked all doors when he left the Oak Street House on April 15, 2022. *Id.* at PageID.167, 169.

At the same time Defendant was investigating Plaintiff's insurance claim, the Saginaw City Fire Department was investigating the cause of the fire. First responders from the Fire Department concluded that—because of the severity of the fire, the reports of neighbors that the house had been unoccupied since January 2022, and their inability to quickly identify the fire's cause—the fire was "suspicious in nature" and warranted further investigation. ECF No. 22-3 at PageID.544 Throughout its investigation, the Saginaw Fire Department noted that (1) the doors to the Oak Street House were closed but unlocked when the fire broke out; (2) the fire left irregular burn patterns; and (3) the fire appeared to have three separate origin points: the first-floor bedroom and both second floor bedrooms. *Id.* at PageID.546–48. The Department ultimately classified the fire as "incendiary,"[1] *id.* at PageID.548, after five of eight samples taken from the burned carpet and flooring of the Oak Street House revealed the presence of "ignitable liquid" such as "paint thinners, mineral spirits, and charcoal starters." ECF No. 22-4 at PageID.600.

On October 14, 2022, Defendant denied Plaintiff's insurance claim for three reasons. First, Defendant denied Plaintiff's claim because Plaintiff was "not physically residing" at the Oak Street House on April 16, 2022, so the house was not a "residence premises" as defined by Plaintiff's homeowner's policy, and the policy accordingly did not cover the loss. ECF No. 3-3 at PageID.119; *see also* ECF No. 3-2 at PageID.83–84 (defining "residence premises" as "the single-family building structure identified as the insured property . . . where [the insured individual] *reside[s]* and which is *principally used as a private residence*" (emphasis added)).

---

[1] An "incendiary" fire is defined by the National Fire Protection Association as a fire that "is intentionally ignited in an area or under circumstances where and when there should not be a fire." NAT'L FIRE PROT. ASS'N, NFPA 921 § 3.3.121 (2021).

Second, Defendant denied Plaintiff's claim because it concluded "[t]he April 16, 2022 fire was not an accident, but rather was intentionally set by [Plaintiff] or at [Plaintiff's] direction and is therefore excluded from coverage." ECF No. 3-3 at PageID.119; *see also* ECF No. 3-2 at PageID.89, 95 (expressly excluding coverage for any loss to dwelling or personal property caused by "intentional or criminal acts of or at the direction of any insured person, if the loss that occurs: (a) may be reasonably expected to result from such acts; or (b) is the intended result of such acts").

Third, Defendant denied Plaintiff's claim because it concluded Plaintiff, throughout his claim submission, concealed or misrepresented (1) the use and occupancy of the Oak Street House; (2) Plaintiff's primary residence in Texas; (3) Plaintiff's financial condition; and (4) Plaintiff's wrongful connection to the April 16, 2022, fire. ECF No. 3-3 at PageID.119. And Plaintiff's homeowner's policy expressly allows Defendant to void the policy or deny a claim if Plaintiff misrepresents or fraudulently conceals material facts throughout a claim submission or investigation. ECF No. 3-2 at PageID.85 ("We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.").

Plaintiff maintains Defendant wrongfully denied his claim and, in March 2023, filed a Complaint against Defendant in Saginaw County Circuit Court, ECF No. 1-1 at PageID.11–16, which Defendant removed to this Court on May 15, 2023. ECF No. 1. Plaintiff's Complaint alleges breach of contract (Count I), seeks appraisal (Count II), and seeks penalty interest under Michigan's Uniform Trade Practices Act (UTPA), MICH. COMP. LAWS § 500.2006 (Count III). ECF No. 1-1 at PageID.11–15. Defendant Answered Plaintiff's Complaint on May 15, 2023 and alleged, as an affirmative defense, that *no coverage* applies to Plaintiff's claims under the terms of his policy, for the same reasons Defendant articulated in its October 2022 denial letter. ECF No. 3 at PageID.33–34. In other words, Defendant maintains that it's denial of Plaintiff's claims was

consistent with—rather than a breach of—Plaintiff's policy and, thus, appraisal and penalty interests are unwarranted. *See id.*

Trial is scheduled to begin on August 20, 2024. ECF No. 24. On May 7, 2024, both Parties filed motions *in limine*. ECF Nos. 22; 23.

## II.

"A 'motion *in limine*' is any motion 'to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Good v. BioLife Plasma Servs., L.P.*, No. 1:18-CV-11260, 2022 WL 1837071, at \*2 (E.D. Mich. June 3, 2022) (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013)). Motions in *limine* are designed "to narrow the issues remaining" and "minimize disruptions," *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999), and help ensure "evenhanded and expeditious management of trials." *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017) (internal citations omitted). Indeed, "[a]lthough neither the Federal Rules of Evidence, nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion i*n limine*, the Supreme Court has authorized district courts to rule on motions *in limine* "pursuant to the district court's inherent authority to manage the course of trials." *Id.* (citing *Luce*, 469 U.S. at 41 n. 4).

A district court should grant a motion *in limine* to exclude evidence "only when [that] evidence is clearly inadmissible on all potential grounds." *Id.* (quoting *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844 (N.D. Ohio 2004)). "In cases where that high standard is not met, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* (internal citations omitted); *see also Good v. BioLife Plasma Servs.*, L.P., 605 F. Supp. 3d 947, 955 (E.D. Mich.), *reconsideration denied*, 647 F. Supp. 3d 555 (E.D. Mich. 2022); *Figgins v. Advance Am. Cash Advance Centers of*

*Michigan, Inc.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007) ("It may be desirable in many cases to defer ruling . . . until trial[.]").

Importantly, the denial of a motion *in limine* seeking to exclude evidence "does not necessarily mean that the court will admit the evidence at trial." *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017). Instead, "[d]enial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

### III.

In their motions *in limine*, both Parties dispute the best method for calculating the Oak Street House's actual cash value (ACV). *See generally* ECF Nos. 22; 23. Aside from this shared issue, both Parties separately seek to exclude two categories of evidence at trial. *Id.* This Court will first address the common ACV dispute, and will then turn to each Parties' individual evidentiary arguments.

### A. Actual Cash Value Calculation

The Parties first dispute how a hypothetical appraiser should calculate Plaintiff's potential damages and the ACV of his loss, if Plaintiff first succeeds at trial in establishing his Policy covered his alleged loss. But this issue is non-evidentiary, irrelevant, and premature.

Plaintiff's Policy unambiguously requires an appraiser—rather than a jury—determine the amount of loss, when appraisal is demanded by either Plaintiff or Defendant. *See Arnett v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:23-CV-11138, 2024 WL 2819102, at *3 (E.D. Mich. June 3, 2024). Plaintiff demanded appraisal when he filed Count II of his Complaint. *See id.* Defendant agrees

that Plaintiff's Policy *requires* appraisal in this case. *Id.* at *5. And this Court has held that post-trial appraisal in this case is "mandated by Michigan statute." *Id.*

Nevertheless, Defendant "seeks this Court's assistance in instructing the appraisal panel on the proper method for determining" the ACV of Plaintiff's Oak Street House. ECF No. 22 at PageID.467, n. 5. This value is important because, if successful at trial, Plaintiff can only recover the ACV of his damaged property, up to the limits set by his Policy. *See* ECF No. 3-2 at PageID.64, 86, 98 (limiting dwelling liability to $239,412, and limiting personal property liability to $95,765). Specifically, Defendant argues the proper method for determining ACV is to employ the Broad Evidence Rule which, as the name implies, allows an appraiser to consider a wide range of economic evidence when calculating ACV, such as the Oak Street House's fair market value,[2] replacement costs, and depreciation. *See Evanston Ins. Co. v. Cogswell Properties, LLC*, 730 F. Supp. 2d 748, 750 (W.D. Mich. 2010), *aff'd*, 683 F.3d 684 (6th Cir. 2012) (noting "[t]he broad evidence rule allows an appraiser to consider any evidence logically tending to the formation of a correct estimate of the value of the destroyed or damaged property" (internal citations and quotations omitted)).

Plaintiff, on the other hand, argues Broad Evidence Rule is inapplicable, and that his Policy expressly defines ACV as the property's replacement cost[3] minus any depreciation. ECF No. 23 at PageID.710–15.

---

[2] Defendant's expert—certified residential appraiser Paul Mabarak—estimates that the fair market value of the Oak Street House is $52,000. ECF No. 29 at PageID.766.
[3] The Policy lists the Oak Street House's replacement cost as $239,412. ECF No. 3-2 at PageID.67.

**2.**

To the extent both Parties argue about whether a hypothetical appraiser may apply the

Broad Evidence Rule in calculating ACV if Plaintiff hypothetically succeeds in establishing

coverage at trial, the Parties' Motions in *Limine* will both be denied.[4] For starters, the Parties'

---

[4] Notably, Defendant's argument that the Broad Evidence Rule applies at appraisal has merit. The Broad Evidence Rule applies if the at-issue insurance policy does not define ACV, or if the definition is ambiguous. *Commodity Res., Inc. v. Certain Underwriters at Lloyds, London*, No. 2:12-CV-10173, 2013 WL 607772, at *4 (E.D. Mich. Feb. 19, 2013) (noting this is the "binding rule of law in this Circuit and the State of Michigan"). Although Plaintiff's Policy broadly defines ACV, the definition is ambiguous such that the Broad Evidence Rule would apply if Plaintiff prevails at trial and his loss is appraised. Plaintiff's Policy provides:

> Actual Cash Value. If  you do not repair or replace the damaged, destroyed, or stolen property, payment will be on an actual cash value basis. This means that there may be a deduction for depreciation. This means there may be a deduction for depreciation. Payment will not exceed the Limit Of Liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

ECF No. 22-2 at PageID.514 (emphasis omitted). And the Policy was amended to add:

> [W]hen determining the actual cash value of the loss, the costs necessary to repair, rebuild or replace the destroyed, damaged or stolen property may be depreciated. Such costs subject to depreciation may include, but are not limited to, goods, materials, equipment, labor, overhead and profit, taxes, fees or similar charges.

*Id.* at PageID.482, 484.

Plaintiff interprets this language to mean that the ACV is equal to the Oak Street House's "replacement cost less depreciation." ECF No. 28 at PageID.756. But Plaintiff seemingly reads words into the Policy language that are not there, and ignores other plausible interpretations. *See Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999) ("An insurance contract is ambiguous when its provisions are capable of conflicting interpretations"); *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003) (same).

True, one could, like Plaintiff, interpret the relevant Policy language to mean that the "costs necessary to repair" an insured property are the *only* costs considered when calculating ACV, such that ACV is measured by the replacement cost minus depreciation. But one could just as plausibly interpret the relevant Policy language to mean that repair costs are *one of several* costs considered within the ACV calculation. Indeed, the relevant language of Plaintiff's policy is couched in

arguments are not evidentiary. Although the Broad Evidence Rule may expand the relevant evidence that a hypothetical appraiser could consider when calculating Plaintiff's loss at a *post-trial appraisal*, this dispute has nothing to do with anticipated evidence at the upcoming *trial*, which is limited *solely to the underlying issue of coverage.* Indeed, this Court has already identified the three material questions of fact to be answered at trial:

> (1) Did Plaintiff cause the April 16, 2022 fire?
> (2) Did Plaintiff reside somewhere other than the Oak Street House at the time of the fire?; and
> (3) Did Plaintiff conceal or misrepresent material facts throughout his filing or Defendant's investigation of his insurance claim?

*Id.* at \*5. "If any of these questions are answered in the affirmative, Plaintiff does not have insurance coverage for his alleged loss," Defendant did not breach the Policy by denying Plaintiff's insurance claim (Count I), and "Plaintiff is not entitled to appraisal or penalty interest" (Counts II and III). *Id.* at \*6.

Importantly, as Defendant recognizes, ECF No. 29 at PageID.773, *Defendant* has the burden at trial of proving, by a preponderance of the evidence, that any of these three Policy exclusions apply. *Farmers Bank & Trust Co. of Winchester v. Transamerica Ins. Co.*, 674 F.2d 548, 550 (6th Cir. 1982) ("It is elementary in insurance law that a claimant under an insurance policy has the initial burden of proving that he comes within the terms of the policy. . . . Conversely, the insurer carries the burden if it claims that one of the policy exclusions applies to the claimant and prevents recovery."). *Auto Owners Ins. Co. v. Seils*, 146, 871 N.W.2d 530, 539 (Mich. Ct. App. 2015) ("A two-step analysis is used when interpreting an insurance policy: first, does the general insurance policy provide coverage for the occurrence, and second, if coverage

---

*permissive* ("may"), rather than *mandatory* ("shall" or "is") terms and speaks only vaguely about how ACV may be impacted by "depreciation," which is similarly not specifically defined.

exists, does an exclusion negate the coverage? It is the insured's burden to establish that his claim falls within the terms of the policy. . . . The insurance company has the burden to prove that one of the policy's exclusions applies." (internal quotations and citations omitted). And, relevant to the arson Policy exclusion, Defendant can rely on circumstantial evidence—such as evidence suggesting Plaintiff's motive or opportunity to ignite the Oak Street House. *Johnson v. Auto-Owners Ins. Grp.*, 509 N.W.2d 538, 539 (Mich Ct. App. 1993); *George v. Travelers Indem. Co.*, 265 N.W.2d 59, 62 (Mich. Ct. App. 1978) ("Where there is independent evidence of the incendiary origins of a fire, Michigan courts have affirmed arson convictions based on circumstantial evidence of motive (such as insurance coupled with business difficulties) plus opportunity (such as access to the building).").

This Court need not "instruct[] the appraisal panel on the proper method for determining ACV," ECF No. 22 at PageID.467, n. 5, at this juncture because doing so would not resolve any anticipated evidentiary disputes relevant to Defendant's burden, nor "narrow the issues" or "minimize disruptions" at trial. *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999). Accordingly, to the extent the Parties' Motions *in Limine* argue different methods of calculating ACV are correct, both motions will be denied.

### B. Plaintiff's Motion *in Limine*

Aside from ACV and the Broad Evidence Rule's applicability at appraisal, Plaintiff's Motion *in Limine* seeks to exclude two categories of evidence. Each will be addressed in turn.

#### 1. The Fair Market Value of Plaintiff's Oak Street House

Defendant anticipates calling Paul Mabarak—a certified residential appraiser—to offer his expert opinion that the fair market value of the Oak Street House at the time of the fire was $52,000. ECF No. 29 at PageID.766. And Defendant concedes it intends to use this as circumstantial

- 10 -

evidence of Defendant's motive to cause the Oak Street House fire, by highlighting the near

$200,000 disparity between Mabarak's $52,000 fair market value estimation—what Defendant

would likely receive if he sold the House—and the $239,412 Policy limit—the maximum amount

Defendant could receive for covered dwelling losses under his Policy. ECF No. 3-2 at PageID.64,

67.

Plaintiff argues Defendant should be precluded from using this evidence at trial because

(1) the fair market value is irrelevant under Rules 401 and 402, (2) the fair market value would

mislead the jury under Rule 403, and (3) Mabarak's opinion is inadmissible expert testimony under

Rule 702. ECF No. 23 at PageID.700, 715. Each argument fails.

**a.**

Rule 401 of the Federal Rules of Evidence provides "evidence is relevant if: (a) it has *any*

tendency to make a fact more or less probable than it would be without the evidence; and (b) the

fact is of consequence in determining the action." FED. R. EVID. 401. Unless expressly excluded

by another evidentiary rule, relevant evidence is admissible. FED. R. EVID. 402.

Evidence of the Oak Street House's fair market value is relevant under Rule 401 because

it increases the probability Defendant caused the fire, which would exclude his alleged loss from

coverage under the express terms of his Policy. *See Johnson v. Auto-Owners Ins. Grp.*, 509 N.W.2d

538, 539 (Mich. Ct. App. 1993); *Smith v. Farm Bureau Ins. Co*., No. 281034, 2009 WL 563727,

at *1 (Mich. Ct. App. Mar. 5, 2009) (noting "the value of the property claimed by plaintiff would

be relevant" to insurance investigation)

**b.**

Mabarak's fair market value testimony raises no Rule 403 concerns, either. Rule 403 allows

courts to exclude relevant evidence "if its probative value is *substantially* outweighed" by either

(1) *unfair* prejudice; (2) confusing the issues; (3) misleading the jury; (4) undue delay; (5) wasting time; or (6) needlessly presenting cumulative evidence. FED. R. EVID. 403 (emphasis added). But evidence is not excluded as being unfairly prejudicial under Rule 403 merely because it damages the party against whom it is offered. Rather, "unfair prejudice" under Rule 403, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

Plaintiff argues that evidence of the Oak Street House's fair market value would "mislead" the jury "into believing the fair market value of the property is a component of [Plaintiff's] damages." ECF No. 23 at PageID.715. But, as explained *supra* Section III.A, the upcoming trial is limited *solely to the underlying coverage issue*, as both Parties have agreed to post-trial appraisal, as mandated by Michigan law. *Arnett v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:23-CV-11138, 2024 WL 2819102, at *5 (E.D. Mich. June 3, 2024). Moreover, this Court is satisfied that any potential confusion can be mitigated by jury instructions which explain that, as part of Defendant's burden to prove Plaintiff's alleged loss is excluded from coverage under his Policy, evidence of the Oak Street House's fair market value is only relevant as circumstantial evidence of Plaintiff's motive to set or cause the fire. At bottom, Plaintiff has not shown that the fair market value of his House is "clearly inadmissible" on Rule 403 grounds. *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017).

**c.**

Lastly, Mabarak's opinion about the Oak Street House's fair market value is proper expert testimony, and is thus admissible under Rule 702.

Rule 702 provides that a witness "who is qualified as an expert by knowledge, skill, experience, training or education" may testify about their opinions so long as:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

Plaintiff disputes only the first prong, and argues, conclusively, that Mabarak's opinion would "not aid the trier of fact in understanding or determining any issue in the case." ECF No. 23 at PageID.715. But how? Plaintiff does not say. *See id.* Contrary to Plaintiff's argument, even the most educated lay juror could not estimate the fair market value of Plaintiff's house. But Mabarak—based on his specialized knowledge as a certified real estate appraiser—can, and has. *See* ECF No. 29 at PageID.766. As explained, the fair market value is relevant because it is nearly $200,000 *less* than Plaintiff's Policy limit, which tends to show that Plaintiff may have had a financial motive to set the fire. And this motive is one of several pieces of circumstantial evidence Defendant may permissibly point to in attempt to prove Plaintiff's alleged loss is excluded from coverage under his Policy. Thus, Mabarak's anticipated expert opinion is precisely the type that Rule 702 allows. For these reasons, Plaintiff's Motion *in Limine* to exclude evidence of the fair market value of the Oak Street House will be denied.

### 2.  Plaintiff's Financial Status

Plaintiff next seeks to exclude, on Rule 403 grounds, evidence of Plaintiff's financial status, "including his relatively low income, his lack of traditional employment, [his] unpaid bills, [and] the purchase price of [his] home" as evidence of Plaintiff's motive to cause the Oak Street House fire. ECF No. 23 at PageID.715. In support, Plaintiff cites a 44-year old Michigan Supreme Court criminal case which noted:

> Evidence of poverty, dependence on public welfare, unemployment, underemployment, low paying or marginal employment, is not ordinarily admissible to show motive. The probative value of such evidence is diminished because it applies to too large a segment of the total population. Its prejudicial impact, though, is high. There is a risk that it will cause jurors to view a defendant as a "bad man" a poor provider, a worthless individual.

*People v. Henderson*, 289 N.W.2d 376, 380–81 (Mich. 1980).

But the very next sentence of this case notes "[o]ther evidence of financial condition, may[] be admissible in the circumstance of a particular case." *Id.* at 381. And Michigan courts have routinely held that specific evidence of an insured-plaintiff's financial condition is admissible when insurer-defendants assert an arson defense in civil cases. *See, e.g.*, *People v. Burger*, 953 N.W.2d 424, 432 (Mich. Ct. App. 2020) (noting "financial motive may be relevant evidence of arson" and holding that trial court should have allowed defendant's landlord to testify that defendant was current on rent and, thus, had no financial motive to commit arson); *Cardinal v. Farmers Mut. Ins. Co.*, No. 293805, 2011 WL 2022948, at *6 (Mich. Ct. App. May 24, 2011) (noting jury heard evidence of insured-plaintiff's mortgage default, gambling losses, casino ATM withdraws in a civil case where insurer-defendant asserted arson defense).

Moreover, Defendant responded that it does not anticipate presenting evidence that Plaintiff was generally "poor" to establish Plaintiff's financial motive to cause the Oak Street House fire. ECF No. 29 at PageID.771. Indeed, Defendant notes Plaintiff "was not living in poverty" at the time of the fire *Id.* at PageID.775. Instead, Defendant plans on presenting evidence of Plaintiff's "acute financial distress," that, at the time of the fire:

> (1) Plaintiff was on unpaid leave and his earning had declined;
> (2) Plaintiff's multiple businesses in the Saginaw, Michigan area were losing money;
> (3) Plaintiff's bank accounts and credit cards were overdrawn;
> (4) Plaintiff's bills were past due;
> (5) The Oak Street House had no running water and needed repair.

*See* ECF No. 29 at PageID.774. Defendant claims this "acute financial distress," coupled with the

vast difference between Plaintiff's $283,000 insurance claim and the $2,900 price he paid for the

Oak Street House, *see* ECF No. 29 at PageID.774, provide circumstantial evidence of Plaintiff's

financial motive to cause the fire. *Id.*

       At this juncture, there are no apparent Rule 403 concerns with Defendant's proffered,

specific evidence of Plaintiff's financial status. The evidence is equally as prejudicial as it is

probative. *See* GARY S. MOGAL, AM. JUR. PROOF OF FACTS § 7 (2024) ("Imminent financial ruin

is the most common reason for the intentional burning of insured property. The thought of setting

fire to insured property is very tempting to individuals in desperate need of funds to save a

business[.]"). This Court appreciates Plaintiff's argument, and recognizes the thin line between

*inadmissible* general "evidence of poverty" and potentially *admissible* specific evidence of "acute

financial distress" that Defendant anticipates introducing. Although Plaintiff's Motion *in Limine*

will be denied, Plaintiff is free to object at trial to the extent he believes Defendant crosses this

line.

### C.  Defendant's Motion *in Limine*

       Turning to Defendant's Motion *in Limine*, Defendant seeks to exclude two categories of

evidence at trial. Each category will be addressed in turn.

### 1.  Criminal Prosecution

       Defendant first seeks to preclude Plaintiff from testifying that he was *not* criminally

prosecuted in connection with the Oak Street House fire. ECF No. 22 at PageID.458–61. But, on

May 23, 2024, the Parties filed a stipulation that excludes this testimony, noting that both Parties

"agree[] not to reference" Plaintiff's "prosecution or non-prosecution for arson during their case

in chief, cross examination, or during rebuttal." ECF No. 26 at PageID.731. Thus, to the extent

Defendant's Motion in *Limine* seeks this very relief, the motion will be denied as moot.

### 2.   Other Arsons

Defendant next seeks to exclude any evidence "regarding general fires [or] general arson

in the City of Saginaw" as irrelevant under Rules 401 and 402, and substantially more prejudicial

than probative under Rule 403. *See* ECF No. 22 at PageID.461 (internal quotations omitted).

Plaintiff responds that he should be allowed to "interrogate Defendant's witnesses on the scope of

their investigation." ECF No. 28 at PageID.755.

This evidentiary objection is too broad for this Court to assess at this pre-trial stage. *See*

*Fakhoury v. O'reilly*, No. 16-13323, 2022 WL 909347, at *6 (E.D. Mich. Mar. 28, 2022) (noting

"broad" objections to speculative categories of testimony  "prevent[] both [the opposing party] and

this Court from properly addressing" a motion *in limine*). This Court will not categorically exclude

all references to all Saginaw fires or arsons because, to Plaintiff's point, context at trial may show

that a particular fire is relevant, probative, and non-prejudicial. Indeed, evidence of uninvestigated

fires, or fires set around the Oak Street House at the same time by other people, would be material

to the central coverage dispute. Accordingly, Defendant's Motion *in Limine* will be denied.

### IV.

Accordingly, it is **ORDERED** that Defendant's Motion *in Limine*, ECF No. 22, is

**DENIED.**

Further, it is **ORDERED** that Plaintiff's Motion *in Limine*, ECF No. 23, is **DENIED.**

**This is not a final order and does not close the above-captioned case.**

Dated: July 25, 2024                    s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge

- 16 -